IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JOE R. JENKINS | : CIVIL ACTION |
| | : |
| v. | : NO. 19-2401 |
| | : |
| GEO CORPORATION, ET AL. | : |
| | : |

**MEMORANDUM**

SCHMEHL, J.   /s/ JLS                                                                     MAY  28, 2020

    *Pro se* Plaintiff brought this action pursuant to 42 U.S.C. § 1983, claiming that while he was incarcerated as a pre-trial detainee at George Hill Correctional Facility ("GHP") the individual defendants were deliberately indifferent to his serious medical needs in violation of the Eighth Amendment and the corporate Defendant maintained policies that allowed the individual Defendants to do so. Plaintiff also asserts state law claims for assault and battery, negligence and medical malpractice. Plaintiff seeks compensatory and punitive damages as well as declaratory and injunctive relief.

    Named as defendants are several individuals at GHP including David Byrnes, the Warden; Dr. Ronald Phillips, the Medical Director; Mariel Trimble, the Health Services Administrator ("HSA"); Sergeant Carter, the Unit Manager of the Medical Department and Jane Doe, a nurse in the Medical Department.[1] Plaintiff has also named GEO Corporation ("GEO"), which Plaintiff alleges is a private corporation tasked with operating and maintaining the GHP, including the medical department. Presently before the Court is the

---

[1] Plaintiff has filed an Amended Complaint solely for the purpose of identifying Jane Doe as Leslie Harless-Balmer. [Doc. 17].

joint motion of the Defendants under Fed. R. Civ. P. 12(b)(6) to dismiss for failure to state a claim. For the reasons that follow, the motion is denied.

On a motion to dismiss for failure to state a claim, courts accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief. *Phillips v. County of Allegheny*, 515 F.3d 224 (3d Cir. 2008). In order to survive a motion to dismiss, a complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Iqbal*, 556 U.S. at 678. "Only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* at 679.

As a threshold matter, the Court notes that since Plaintiff alleges that he is a pre-trial detainee, he should have based his constitutional claim for inadequate medical treatment on the Due Process Clause of the Fourteenth Amendment, rather than the Eighth Amendment. *Natale v. Camden County Correctional Facility*, 318 F.3d 575, 581 (3d Cir. 2003). That being said, the standard to be applied under the Fourteenth Amendment is the same as the standard to be applied under the Eighth Amendment. *Id.*

In order to state a claim for a violation of the Eighth Amendment a plaintiff must allege that the defendants were deliberately indifferent to his serious medical needs. *Estelle v. Gamble*, 429 U.S. 97 (1976). "First, plaintiff must make an 'objective' showing that the deprivation was 'sufficiently serious,' or that the result of defendant's denial was sufficiently serious. Additionally, the plaintiff must make a 'subjective' showing that

defendant acted with 'a sufficiently culpable state of mind.'" *Estate of Thomas v. Fayette County*, 194 F. Supp. 3d 358, 370 (W.D. Pa. 2016). As the Supreme Court has explained, "deliberate indifference entails something more than mere negligence" and is a subjective standard that requires the official to both "be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists" and to "also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 835-37 (1994).

Our Court of Appeals has found deliberate indifference where "(1) prison authorities deny reasonable requests for medical treatment, (2) knowledge of the need for medical care is accompanied by the intentional refusal to provide it, (3) necessary medical treatment is delayed for non-medical reasons, and (4) prison authorities prevent an inmate from receiving recommended treatment for serious medical needs." *Pearson v. Prison Health Service*, 850 F. 3d 526, 538 (3d Cir. 2017). Prison officials are not permitted to either deny "reasonable requests" for medical treatment or opt for "easier and less efficacious" treatment plans. *Palakovic v. Wetzel*, 854 F.3d 209, 228 (3rd Cir. 2017).

With respect to disputes over adequate medical treatment, "federal courts are generally reluctant to second guess medical judgment and to constitutionalize claims which sound in state tort law," *Palakovic*, 854 F.3d at 228 (citing *United States ex rel. Walker v. Fayette Cty.,* 599 F.2d 573, 575 n.2 (3d Cir. 1979) (internal quotations and citation omitted)), because questions of medical treatment remain "a question of sound professional judgment." *Palakovic*, 854 F.3d at 228. Simple disagreement about the proper course of medical treatment is insufficient to establish deliberate indifference. *Pearson*, 850 F.3d at 535. Deliberate indifference is a higher standard than

negligence and may be difficult to establish, because prison medical officials have leeway in diagnosing and treating inmates. *Estelle,* 429 U.S. at 105-06; *Durmer v. O'Carroll,* 991 F.2d 64, 67 (3d Cir. 1993). Thus, a mere violation of the "standard of care," such as negligence, will not suffice to rise to the level of a constitutional infringement. *Pearson*, 850 F.3d at 538 (citing *Estelle,* 429 U.S. at 106).

The Supreme Court in *Estelle* elaborated:

> [A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege *acts or omissions sufficiently harmful* to evidence deliberate indifference to serious medical needs.

*Estelle,* 429 U.S. at 106 (emphasis added).

Amazingly, Defendants argue that Plaintiff has not alleged facts that would demonstrate that he suffers from a serious medical problem. In his Complaint, Plaintiff alleges that on July 12, 2018, he was involved in a near-fatal motor vehicle accident and was taken to Penn Presbyterian Hospital. (Compl. at 12.) Plaintiff alleges that as a result of the accident he suffered a broken right ankle, damage to his right knee, a massive head injury, severe burns, a severe break in his right pelvis, and a shattered right hip and socket. (*Id.* at 13-18.) Plaintiff alleges that during the accident, his "right leg was launched through his pelvis, and into his right hip, causing almost catastrophic damage." *(Id.* at 18.*)* According to Plaintiff, he "had to remain in traction, where a steel rod was placed through his right knee, then attached to a 15 pound weight, to pull plaintiff's leg back out of his pelvis and hip socket. Plaintiff's injury was so severe he had to remain in traction for 1

week before he could be operated on." (*Id.* at 19.) A bone trauma expert operated on Plaintiff and placed "a steel mesh and bar inside of plaintiff, and 2 rows of high strength titanium screws directly into plaintiff's hip." (*Id.* at 21.) Plaintiff alleges that he "has about a 2 foot long 'L-shaped' incision, that took approximately 20 to 30 staples to close." (*Id.*) Plaintiff alleges that during his treatment at Penn Presbyterian, he was given morphine, oxycodone, tramadol and several other opiates to control his severe pain. (*Id.* at 22.) According to Plaintiff, just one week after his surgery, and despite being unable to walk unaided and still in need of narcotics, officials from GHP insisted that he be transferred to the medical unit at GHP. (*Id.* at 23.)

Clearly, these allegations, when accepted as true, would convince any reasonable person that Plaintiff suffered from several serious medical conditions at the time he was transferred to GHP.

Defendants also argue that Plaintiff has failed to allege facts to show that each individual Defendant acted with deliberate indifference to his serious medical needs. The Court does not agree.

Plaintiff alleges that he was taken to GHP on August 1, 2018. (*Id.* at 32.) The Complaint alleges that before Plaintiff was taken from Penn Presbyterian to GHP, the Medical Department at GHP promised officials at Penn Presbyterian that Plaintiff would have a hospital bed for as long as he needed, a wheelchair, necessary implements to ambulate and bathe himself and the same access to nurses as he had at Penn Presbyterian. (*Id.* at 28-30.) Plaintiff also alleges that in the days before he was transferred, Penn Presbyterian weaned him from his regimen of narcotics and started giving him Tylenol 3 because that was the only pain relief the Medical Department offered.

Plaintiff alleges that despite his serious condition, Dr. Phillips never performed a physical examination on Plaintiff nor asked him questions about his condition. (*Id.* at 41, 55, 82, 105, 106.) Relying on reports from two nurses, Dr. Phillips insisted that Plaintiff was able to walk and ordered that Plaintiff's wheelchair be taken away. (*Id.* at 42.) When Plaintiff informed Dr. Phillips that Tylenol would be ineffective considering the amount of pain he was in, Dr. Philips allegedly stated, "I really do not care. I saw worse injuries in Vietnam. You will live." (*Id.*) When Plaintiff requested pain medication in the ensuing weeks, he received a message from Dr. Phillips through one of the nurses that "if Plaintiff hurt so much that he could buy Motrin off of commissary, and that they had no intention of giving him any." (*Id.* at 58.) Plaintiff alleges that Dr. Phillips refused to authorize a pillow, double mattress, sneakers and a cane. (*Id.* at 64, 104.) Plaintiff alleges that Dr. Phillips authorized a bottom bunk for only three months and told Plaintiff, "You are lucky that I gave you that." (*Id.*)  According to Plaintiff, the nurses advised him that Dr. Phillips was ignoring his requests for pain medication and telling his subordinates to do the same. (*Id.* at 72.) Plaintiff alleges that Dr. Phillips never ordered a single x-ray, an MRI or a CT-scan and never permitted Plaintiff to see a specialist. On one occasion, Dr. Phillips allegedly threatened to have Plaintiff thrown onto the "hole" if he did not stop complaining. (*Id.* at 85.)

With regard to Defendant Leslie Harless-Balmer, Plaintiff alleges that during his initial assessment at GHP, Defendant Harless-Balmer told Plaintiff, "You are faking!!! You are not in any pain! There is nothing wrong with you.!" (*Id.* at 36.) Plaintiff alleges that he had never seen Defendant Harless-Balmer before, but that she told him that she had observed him walking normally when he entered the Medical Department. (*Id.*) Plaintiff

alleges that on January 4, 2019, Defendant Harless-Balmer once again stated to Plaintiff, "You are still faking. We do not go for that here." (*Id.* at 84.)

Plaintiff alleges that on August 7, 2018, Defendant Sergeant Carter came to his isolation cell for the purpose of moving Plaintiff to another Section of GHP. (*Id.* at 45.) At this time, Plaintiff was on crutches. (*Id.*) Upon observing Plaintiff's crutches and other implements Plaintiff had been given by Penn Presbyterian at discharge, Carter allegedly informed Plaintiff, "You can have none of that. . ." I do not give a fuck what that stuff is for, you are not keeping any of it. This is my fucking unit. I say what goes." (*Id.* at 46.) Plaintiff alleges that Carter took Plaintiff to a cell which housed a psychiatric patient and that there were feces on the walls and urine on the floor. (*Id.* at 47.) When Plaintiff protested, Carter allegedly told Plaintiff, "If you do not get in that cell right now, I am going to fuck you up." (*Id.* at 48.) Plaintiff alleges that Carter then grabbed Plaintiff by the arm, even though he was on crutches, and pushed Plaintiff into the cell. (*Id.* at 49.) Carter then allegedly informed Plaintiff, "This is my unit. I run this shit. You do what I say, and go where I tell you to go. Dr. Phillips cannot help you." (*Id.*) Plaintiff alleges that Carter took Plaintiff's leg brace which he alleges he needed to properly recover from his hip reconstruction. (*Id.* at 51.) Plaintiff also alleges that there was no hospital bed in this cell and that he was forced to sleep on a "1-inch thick piece of foam on top of a steel plate. There was no pillow, and the lights remained on high-beam 24/7." (*Id.* at 50.)

Plaintiff alleges that Defendant HSA Trimble told "outright and blatant lies" to officials at Penn Presbyterian concerning the level of care and medication Plaintiff would receive at GHP. (*Id.* at 98.) HSA Trimble, along with Dr. Phillips, also allegedly sent

Plaintiff a message through one of the nurses that if he was in pain, he could purchase Motrin from the Commissary. (*Id.* at 58.)

Despite having been informed by Plaintiff in writing about his injuries, Warden Byrnes is alleged to have ordered that Plaintiff be placed in a cell with detoxing and mental health patients. (*Id.* at 125.)

When accepted as true, these allegations against each Defendant clearly satisfy the deliberate indifference standard against as enunciated by the Supreme Court in *Estelle. See, e.g. Spruill v. Gillis,* 372 F.3d 218, 235 (3d Cir.2004) (Eighth Amendment violated when authorities expose inmates to " 'undue suffering' " by denying reasonable requests for medical treatment); *White v. Napoleon,* 897 F.2d 103, 108 (3d Cir.1990) (Eighth Amendment claim stated with allegations of multiple instances when prison doctor "insisted on continuing courses of treatment that the doctor knew were painful [or] ineffective"); *Hughes v. Joliet Correctional Center*, 931 F. 2d 425, 428 (7th Cir. 1991)( "The facts suggest that these two defendants—particularly Dr. Harper—were treating Hughes not as a patient, but as a nuisance; that they were not only careless of his welfare, but indifferent to it; that although they doubtless underestimated the severity of his injury, at the same time they were insufficiently interested in his health to take even minimum steps to guard against the possibility that the injury was severe. Such words and deeds as telling Hughes he was full of bullshit, shifting him to the psychiatric ward where he would not be allowed to have his crutches and leg brace, and ordering the bed moved away from the toilet so that Hughes would have to get up and walk to it (without the aid of crutches, since he was still in the psychiatric ward) suggest more than mere neglect—suggest hostility, brutality, even viciousness.")

Although Defendants argue that Plaintiff's claim fails because he received some treatment, Defendants overlook the possibility that the treatment Plaintiff may have received was "so blatantly inappropriate as to evidence intentional mistreatment likely to seriously aggravate" his condition. *Greeno v. Daley*, 414 F. 3d 645, 654 (7th Cir. 2005) quoting *Snipes v. DeTella,* 95 F.3d 586, 592 (7th Cir.1996) (internal quotations omitted). Perhaps, discovery will paint a different picture. At this time, however, Plaintiff's Complaint adequately alleges a Fourteenth Amendment claim against each individual Defendant for deliberate indifference to his serious medical needs.

Turning to Plaintiff's claim against Defendant GEO, "[a] private corporation contracted by a prison to provide health care for inmates [such as GEO] cannot be held liable on a respondeat superior theory; rather, it can only be held liable for constitutional violations if it has a custom or policy exhibiting deliberate indifference to a prisoner's serious medical needs." *Henry v. Buskirk,* 2011 WL 767540 at * 4 (E.D. Pa. 2011) (*citing*, *Natale v. Camden Co. Correctional Facility*, 318 F.3d 575, 583-584 (3d Cir. 2003).

Plaintiff alleges that Defendant GEO had policies in place that: 1) allowed a "non-medical" person such as Sergeant Carter to make a medical decision and take away Plaintiff's leg brace and other implements that he had received from Penn Presbyterian. (*Id. at 102*)*;* 2) discouraged prisoners from seeking medical treatment in order to save money; and 3) discouraged its employees from ordering necessary tests, dispensing proper medication and referring prisoners to specialists. (Compl. at 112-115.) Plaintiff alleges that as a result of these policies, he was forced to suffer excruciating pain as well as irreversible damage to his hip and ankle. (*Id.*)

The Court realizes that the alleged policies pled by Plaintiff are somewhat conclusory in nature. However, given the difficulty a typical prisoner, let alone one in Plaintiff's alleged condition, has in establishing a more specific policy at the pleading stage, the Court will allow Plaintiff the opportunity to flush out this claim against GEO through discovery.  Again, discovery may reveal an entirely different scenario.